# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## DOCKET NO. 3:13-CV-00095-FDW-DCK

| | |
|---|---|
| JUAN WHIPPLE, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| DAVID TROPEANO and DANIEL C. BUCKLEY, | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court upon Defendants David Tropeano and Daniel C. Buckley's (collectively "Defendants"), Motion to Dismiss, (Doc. No. 12), Plaintiff Juan Whipple's Complaint, (Doc. No. 1), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because Plaintiff appears pro se, the Court issued a Roseboro notice (Doc. No. 13) advising Plaintiff of his right to respond to Defendants' Motion to Dismiss. Plaintiff responded in a timely manner, (Doc. No. 15), and Defendants declined to reply to Plaintiff's Response. (Doc. No. 17). This matter is now ripe for adjudication and for the reasons set forth below, Defendants' Motion is hereby GRANTED, and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

Plaintiff filed this suit on February 14, 2013, alleging claims pursuant to Sections 1983 and 1985 of Chapter 42 of the United States Code. Plaintiff's Complaint arises out of two separate incidents with Charlotte-Mecklenburg Police Department ("CMPD") police officers relating to his failure to obtain a necessary Passenger Vehicle for Hire ("PVH") permit for his tour business, "Queen City Tours." PVH is a branch of the CMPD charged with regulating passenger vehicles for hire. Charlotte, NC, CODE OF ORDINANCES ch. 22 (2011). In accordance

with these ordinances, passenger vehicles for hire are required to obtain and display permit from the PVH ("PVH permit"). Id. at §§ 22-146(b). Driving without a PVH permit is subject to a civil penalty, Id. at § 22-35, and is a class 3 misdemeanor. Id. at § 2-21. CMPD officers are authorized to enforce PVH ordinances. Id. at § 22-35.

In his second cause of action,[1] Plaintiff alleges that on July 6, 2012, Defendant Buckley, a PVH officer with the CMPD, threatened him by calling him to inquire as to why he had not obtained a PVH permit. (Doc. No. 1). Additionally, during the fifteen minute phone call, Plaintiff was warned by Defendant Buckley that if he failed to obtain a PVH permit, his tours might be stopped, his patrons forced to disembark, and he could be cited for conducting bus tours without a PVH permit. Id. Plaintiff claims that this phone call was:

> in retaliation for 1. A lawsuit that I filed against Mr. Gary W. Brigman d/b/a C-Charlotte Tours who reportedly has a PVHF license, 2. A lawsuit filed against Ms. Terri Joelle Polk Chambers, a former contract employee and former PVFH inspector, and 3. A complaint filed against Sergeant William A. Strain, a former PVFH officer.

Id. Plaintiff does not elaborate on how this call was in retaliation to these matters, but does state that because of his experience with Ms. Chambers, he did not trust the authority of the PVH.

In his first cause of action, Plaintiff alleges that on October 4, 2012, while dropping off passengers at a hotel in uptown Charlotte following a tour, he was stopped by two unidentified PVH officers regarding his vehicle. (Doc. No. 1). Approximately one minute after the PVH officers stopped Plaintiff, Defendant Tropeano, a non-PVH officer with the CMPD, approached Plaintiff's vehicle to assist the PVH officers. Plaintiff alleges that Defendant Tropeano then required his two remaining passengers to disembark the bus and detained Plaintiff for approximately twenty minutes because he lacked a PVH permit. Id. While he was detained,

---

[1] The Court elects to address Plaintiff's causes of action in order of the date of the alleged occurrence as opposed to order asserted in the Complaint.

2

Plaintiff reports that he repeatedly questioned Defendant Tropeano's authority to stop his vehicle because Plaintiff's vehicle displayed a United States Department of Transportation ("USDOT") number and/or Motor Carrier ("MC") number.[2] Defendant Tropeano responded that he possessed the necessary authority to stop his vehicle because he was a CMPD officer and that Plaintiff had to remain there until released to leave. Following additional conversation between Plaintiff and Defendant Tropeano, Plaintiff was ultimately issued a citation for operating a passenger vehicle for hire inside Charlotte city limits without a PVH permit in the amount of $650.00.

Plaintiff seeks $7,943.00 in compensatory damages and $1,900,000.00 in punitive damages. (Doc. No. 1). Defendant has moved to dismiss the Complaint under Fed. R. of Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must provide enough facts to state a claim for relief that is plausible on its face." Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The court must "accept as true all well-pleaded allegations" and "construe the factual allegations in the light

---

[2] According to the public website of the Federal Motor Carrier Safety Administration ("FMCSA"), "[c]ompanies that operate commercial vehicles transporting passengers or hauling cargo in interstate commerce must be registered with the FMCSA and must have a USDOT Number. The USDOT Number serves as a unique identifier when collecting and monitoring a company's safety information acquired during audits, compliance reviews, crash investigations, and inspections." *What is a USDOT Number?*, FMSCA, U.S. D'EPT TRANSPORTATION, http://fmcsa.dot.gov/registration-licensing/registration-USDOT.htm (last visited Oct. 10, 2013). In addition to an USDOT number, the USDOT requires motor carriers to obtain an MC number in order to operate as a "for-hire carrier." See *Frequently Asked Questions (FAQ)*, FMSCA, U.S. D'EPT TRANSPORTATION, http://www.fmcsa.dot.gov/about/other/faq/faqs.aspx#question1 (last visited Oct. 10, 2013).

most favorable to the plaintiff." Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) (citing Mylan Lab., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). However, the Court is "not so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." Id.

The Court will review each of Plaintiff's claims in turn, and first addresses Plaintiff's claim under § 1983 against Defendant Buckley. In order "[t]o state a claim under § 1983, a Plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 (4th Cir. 2009). Plaintiff alleges that Defendant Buckley threatened him by calling to warn him that he needed to obtain a PVH permit and the potential consequences of failing to obtain a PVH permit but does not assert that Defendant Buckley violated any of his constitutional or federal rights. Accordingly, Plaintiff has failed to state a claim under § 1983 against Defendant Buckley for which relief can be granted.

The Court next addresses Plaintiff's claim that Defendant Tropeano unlawfully detained him for twenty minutes in violation of the Fourth Amendment to cite him for his failure to obtain a PVH permit. Plaintiff asserts that because he possessed a USDOT and/or MC number that Defendant Tropeano lacked the authority to stop him because Defendant Tropeano is not a certified USDOT inspector and only certified USDOT inspectors may stop and inspect a vehicle displaying a USDOT and/or MC number. Contrary to Plaintiff's assertion, as a CMPD officer, Defendant Tropeano possessed the authority to detain Plaintiff for his failure to obtain and display PVH permit for his tour bus.[3] It is well established that when a police officer has a reasonable suspicion that a person is committing a crime, the officer can detain the person for a

---

[3] The Court also notes that contrary to Plaintiff's assertion, the Federal Motor Carrier Safety Regulations expressly permit state and local governments to regulate motor carriers. See 49 C.F.R. § 390.9 (2013).

reasonable amount of time and in a reasonable manner in order to determine if a crime is being committed. Terry v. Ohio, 392 U.S. 1 (1968). "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citations and internal quotations omitted).

In this matter, Defendant Tropeano had reasonable suspicion to stop and detain Plaintiff to determine if he was violating the PVH ordinances by conducting tours without a PVH permit based on the facts that he observed Plaintiff drop off two guests at their hotel and did not see a PVH permit displayed. See Charlotte, NC, CODE OF ORDINANCES ch. 22 § 16-28 (2011) (granting CMPD officers authority to enforce the PVH ordinances). Accordingly, as Defendant Tropeano had the authority to stop Plaintiff to enforce the PVH permit ordinance, this claim is without merit.

Plaintiff also asserts that the twenty minute duration for which he was seized was excessive and therefore unlawful. Courts have held that there is no specific time limit for traffic stops and that a traffic stop should last for "as long as it takes to perform the traditional incidents of a routine traffic stop." Whren v. United States, 517 U.S. 806, 810 (1996). Upon review of the Complaint, the Court finds no evidence that twenty minutes was an excessively long time to detain Plaintiff in order to determine that he did not have a PVH permit and to issue him a citation, especially given Plaintiff's self-professed negative attitude during the stop. (Doc. No. 1). The Court is not persuaded by the additional issues raised by Plaintiff in his Complaint. Therefore, the Court finds that Plaintiff has not alleged a claim under § 1983 against Defendant Tropeano for which relief can be granted.

Finally the Court addresses Plaintiff's claim under 42 U.S.C § 1985 against Defendants. In pertinent part, § 1985 provides:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

"A claim pursuant to § 1985 must be supported 'with specific facts that the defendants were motivated by a specific class-based, invidiously discriminatory animus to deprive the plaintiffs of the equal enjoyment of rights secured by the law to all.'" Traversa v. Ford, 718 F. Supp. 2d 639, 645 (D. Md. 2010) (quoting Francis v. Giacomelli, 588 F.3d 186, 196-97 (4th Cir. 2009)).

Here, Plaintiff asserts that evidence of conspiracy existed between Defendant Buckley and Defendant Tropeano because during Defendant Buckley's phone call to Plaintiff, he warned Plaintiff that his passengers would be required to disembark and that Defendant Tropeano later required his passengers to disembark during the stop. (Doc. No. 15). Plaintiff alleges that when he had been stopped on previous occasions his passengers had not been required to disembark. Id. However, Plaintiff does not assert that Defendants conspired to deprive him of any constitutional or federal right. Therefore, the Court finds that Plaintiff failed to state a claim under § 1985 for which relief can be granted.

Aside from the issues immediately before the Court, the Court also notes that this is not Plaintiff's first completely frivolous misuse of the federal court system. See, e.g., Whipple v. Brigman, No. 3:12-cv-258, 2013 WL 566817 (W.D.N.C. Feb. 13, 2013). In Brigman, the Court warned Plaintiff that he could face sanctions, including a pre-filing injunction, if he continued to file frivolous trademark lawsuits. Id. at *4. Accordingly, Plaintiff is WARNED that the Court will not tolerate any further frivolous filings. Additional frivolous filings may result in sanctions

and the issuance of a pre-filing injunction, a violation of which may include sanctions for contempt of court.

For the above reasons, Defendant's Motion to Dismiss is GRANTED and all of Plaintiff's claims are hereby DISMISSED WITH PREJUDICE. As no claim remains, the Complaint itself is similarly dismissed with prejudice, and the Clerk of Court is respectfully directed to CLOSE THE CASE.

Signed: October 10, 2013

Frank D. Whitney
Chief United States District Judge